**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VEG CORP, INC., | Case No.: 2:17-cv-02893-JCM-NJK |
| Petitioner(s), | **Order** |
| v. | (Docket Nos. 1, 26) |
| UNITED STATES OF AMERICA, | |
| Respondent(s). | |

Pending before the Court is Petitioner Veg Corp. Inc.'s motion to quash formal document request and Respondent United States' counter motion to compel compliance with formal document request. Docket Nos. 1, 26. The Court has considered Petitioner's motion, Respondent's response, Petitioner's reply, Respondent's counter motion to compel, Petitioner's response, and Respondent's reply. Docket Nos. 1, 13, 30, 26, 31, 33. The Court finds the motions properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the Court **DENIES** Petitioner's motion to quash and **GRANTS** Respondent's counter motion to compel. Docket Nos. 1, 26.

**I.      Background**

The instant case involves a formal document request ("FDR") issued by Respondent, through the Internal Revenue Service ("IRS"), to Petitioner, on August 21, 2017. *See generally* Docket No. 1; *see also* Docket No. 1 at 16-37. The IRS is examining the income tax liabilities of William T. and Susan B. Walters for the years 2012-2015. Docket No. 13 at 3. Based on its

investigation, the IRS believes that the Walterses, through Petitioner, engaged in offshore sports betting with various contractors, sub-contractors, foreign subsidiaries, and foreign gaming institutions, in an attempt to unlawfully avoid or improperly report their taxable income in the United States. *Id.* at 3-5. Between November 9, 2016, and June 19, 2017, the IRS issued numerous information document requests ("IDR") to Petitioner and the Walterses. Docket No. 1 at 3, 18-33. The IRS found that Petitioner's responses to the IDRs were insufficient and, therefore, issued the FDR at issue. Docket No. 13 at 6. Petitioner filed the instant motion to quash the FDR on November 17, 2017, alleging that the FDR is flawed and, therefore, should be quashed. Docket No. 1.

**II.    Standards**

The IRS is "authorized and required to make the inquiries, determinations, and assessments of all taxes…" imposed by the Internal Revenue Code ("IRC"). 26 U.S.C. § 6201(a);[1] *see also U.S. v. Clarke*, 134 S. Ct. 2361, 2365 (2014). To facilitate these examinations, the IRS issues IDRs to obtain information related to a taxpayer's tax liability. *See generally* INTERNAL REVENUE MANUAL ("IRM") 4.46.4.1, 4.61.2. An IDR is a written request for information, books, and records, issued at the beginning of an IRS examination. IRM 4.46.4.1, 4.46.4.5, EXHIBIT 4.46.4-1; *see also Maddox v. Commissioner*, 76 T.C.M. (CCH) 1040, at *11 (1998).

If the taxpayer fails to provide the requested documents or to substantially answer an IDR, the IRS may issue an FDR. IRM 4.61.4.7, EXHIBIT 4.61.4-1; *see also* 26 U.S.C. 982(c)(1) (An FDR can only be issued "after the normal request procedures have failed to produce the requested documentation"). Given this prerequisite, an FDR is not considered a routine information gathering tool to be used early in the examination but, instead, a pre-trial discovery tool. IRM EXHIBIT 4.61.4-1(1); *see also Lee v. U.S.*, 2015 U.S. Dist. LEXIS 73399, at *21 (D. Nev. 2015) (citing *Chris-Marine USA v. U.S.*, 892 F. Supp. 1437, 1442 (M.D. Fla. 1995) ("Although [an] FDR is a discovery device, Congress intended that it not be used as a routine beginning of a tax

---

[1] Citations to the IRC may be replaced with citations to Chapter 26 of the United States Code. THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 15.8(c)(v), at 156 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

examination)); *Yujuico v. U.S., IRS*, 818 F. Supp. 285, 286 (N.D. Cal. 1993) ("Congress enacted Section 982 as a pretrial discovery tool….").

Unlike an IDR, an FDR is limited to foreign-based documents, such as books or records, "outside the United States … which may be relevant or material to the tax treatment of the examined item." 26 U.S.C. § 982(d). An FDR consists of a letter, mailed by registered or certified mail to the taxpayer at his or her last known address, which includes: the time and place for production of documents, why previously submitted documentation is not sufficient, a description of the documents requested, and consequences of the failure to comply. IRM Exhibit 4.61.4-1(4), (9); *see also* 26 U.S.C. § 982(c)(1). The IDRs with which the taxpayer failed to comply must also be included with the letter. IRM 4.61.4-1(4). Although an FDR cannot request testimony, a summons may be issued to request unanswered testimony. IRM 4.61.4.7, Exhibit 4.61.4-1(5)(e). Failure to substantially comply with an FDR triggers the statute's exclusionary rule, which prohibits the taxpayer from introducing any foreign-based documents not produced during the information gathering process in "a civil proceeding in which the tax treatment of the examined item is an issue…." 26 U.S.C. § 982(a); *see also* IRM 4.61.4-1(9). The severity of the exclusionary rule encourages the IRS and taxpayer to fulfill the purpose of an FDR, which is to promote cooperation between the two parties in securing the voluntary disclosure of tax documents. *See e.g.*, IRM 4.46.4.1; *see cf.* IRM 4.46.4.10(1) ("…the [IRS] uses penalties to encourage voluntary compliance").

A taxpayer who is issued an FDR "shall have the right to begin a proceeding to quash such request not later than the 90th day after the day such request was mailed" in the United States district court for the district where the taxpayer resides. 26 U.S.C. § 982(c)(2). In response to a motion to quash, the IRS may seek to compel compliance with the FDR. *Id.* While courts are generally silent on the standards to enforce an FDR, the Supreme Court's decision on the standards to enforce an IRS summons in *U.S. v. Powell* was extended to FDRs by the Ninth Circuit in *Yujuico v. U.S., IRS*. 818 F. Supp. at 287 (citing 379 U.S. 48, 57-58 (1964)); *see also Lee*, 2015 U.S. Dist. LEXIS 73399, at 21-22 ("Although there are few published decisions discussing the standard for

enforcing [an] FDR, the legislative history of [26 U.S.C.] § 982 contains the same four requirements for enforcement the Supreme Court establish in [*Powell*]…").

The IRS must make a prima facie case that it has met the four requirements in *Powell*: "(1) the investigation is conducted for a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the information requested is not already in the possession of the IRS; and (4) the administrative steps required by the IRC have been followed."[2] 379 U.S. at 57-58. In essence, the IRS must show that it issued the FDR in good faith. *See Clarke*, 134 S. Ct. at 2364-365; *see also Crystal v. U.S.*, 172 F.3d 1141, 1144-145 (9th Cir. 1999) (acknowledging that the *Powell* requirements are not "an exhaustive elaboration of what good faith means," and that the "'dispositive question in each case' is 'whether the [IRS] is pursuing the authorized purposes in good faith'") (internal citation omitted).

In an action seeking to quash an FDR, and the subsequent request by the IRS to compel compliance, the burden is initially placed on the IRS to show that it has met the *Powell* requirements. *See e.g.*, *Clarke*, 134 S. Ct. at 2367. This is a minimal burden, and is generally satisfied by a declaration or affidavit from the investigating IRS agent. *See Lidas, Inc. v. U.S.*, 238 F.3d 1076, 1082 (9th Cir. 2001) ("Courts have consistently recognized that declarations or affidavits by IRS directors or agents generally satisfy the *Powell* requirements"); *see also Crystal*, 172 F.3d at 1144 (citing *U.S. v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993)); *Liberty Financial Services v. U.S.*, 778 F.2d 1390, 1393 (9th Cir. 1985) ("To establish a need for judicial enforcement, this showing need only be minimal … because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted … Assertions by affidavit of the investigating agent that the requirements are satisfied are sufficient to make the prima facie case") (internal citations omitted).

Once the IRS shows that it has met the *Powell* requirements, the burden shifts to the petitioner, who may contest the FDR "on any appropriate ground." *See Clarke*, 134 S. Ct. at 2365.

---

[2] In cases regarding FDRs, the IRS must follow the administrative steps found in 26 U.S.C. § 982(c)(1), discussed above, to satisfy the fourth *Powell* factor. *See Larue v. U.S.*, 2015 U.S. Dist. LEXIS 171993, at *4 (D. Or. Dec. 22, 2015).

Of the few defenses available, a petitioner may show that: enforcement would be an abuse of the Court's processes; the IRS failed to satisfy one of the *Powell* requirements (including the administrative steps under 26 U.S.C. § 982); or a lack of good faith. *See Andrade v. U.S.*, 2006 U.S. Dist. LEXIS 64825, at *5 (D. Nev. June 2, 2006); *see also Vento v. U.S.*, 2006 U.S. Dist. LEXIS 69916, at *4-6 (D. Nev. Sept. 26, 2006). The petitioner "must allege specific facts," or "offer some credible evidence supporting its charge." *Lee*, 2015 U.S. Dist. LEXIS 73399, at 24.; *see also Liberty*, 778 F.2d at 1392 (internal citation omitted). The petitioner's burden is heavy, especially in light of the minimal showing required of the IRS. *See e.g. Crystal*, 172 F.2d at 1144. If the petitioner fails to meet its burden, the IRS is entitled to a court order enforcing compliance with the FDR at issue.

## III. Discussion

### A. IDR Number 7

Petitioner submits that the FDR should be quashed because it includes an IDR that was issued to the Walterses, "a party other than the Taxpayer" and, therefore, violates the required administrative steps in issuing an FDR. Docket No. 1 at 7. In response, Respondent submits that "[w]hile the Walterses and not [Petitioner] are listed as the taxpayers at the top of the IDR Form 4564, VEG-IE-7 ("IDR 7") was clearly directed by the IRS to [Petitioner] and responded to by [Petitioner's power of attorney]." Docket No. 13 at 14. Respondent further submits that the numbering format of the IDR at issue "indicates that it was directed to [Petitioner]" and was a "follow up request to a prior IDR, VEG-IE-2." *Id.* In reply, Petitioner submits that, because it is a corporation and, therefore, "a separate taxable entity from the Walterses," "the doctrine of corporate entity and the separateness of a corporation from its owners must be respected." Docket No. 30 at 3-4. Petitioner further submits that IDR 7 "may well have been intentionally addressed to [the Walterses], as they were also under audit." *Id.* at 4. In reply, Respondent submits that, *inter alia*, IDR 7 was issued to the Walterses because Mr. Walters filed certain IRS forms on behalf of Petitioner's foreign subsidiaries and, therefore, "the IRS's computer system automatically associated those controlled foreign subsidies [at issue in IDR 7], (and populated [IDR 7]) with Mr. Walters[' address], not [Petitioner's]." Docket No. 33 at 5. Respondent further submits that

Petitioner "must have clearly understood" that IDR 7 was intended for it because the parties discussed the content of the IDR and Petitioner's "[c]ounsel did not voice any concern regarding [IDR 7] or any confusion regarding to whom it was issued…." *Id.* at 6.

IDR 7 was issued to the Walterses' home address. Docket No. 1 at 24. The remaining IDRs at issue, however, were addressed to Petitioner's address. Docket Nos. 1 at 22, 26, 29. 26 U.S.C. § 982(c)(1) requires that an FDR be "mailed by registered or certified mail to the taxpayer at his last known address…." Additionally, IRM Exhibit 4.46.4-1 requires the IRS to "[e]nsure that the IDR is customized to the taxpayer…." The Court, however, does not analyze this issue in a vacuum and, instead, relies on numerous examples of the parties' clear understanding that IDR 7 was intended for Petitioner.

First, IDR 7's request number is formatted as "VEG-IE-7," which is consistent with the remaining IDRs at issue that were mailed to Petitioner. *Compare* Docket No. 1 at 24 *with* Docket No. 1 at 18-20, 22, 26, 29. IDRs intended for the Walterses were consistently labeled and referred to by both parties with a different request number. Docket Nos. 24-3 at 2 (response to IDR 10 from Petitioner's power of attorney, Barbara Kaplan, referencing "WALT" and "VEG-IE" IDRs), 24-5 at 2 ("IDR Walt 6"); *see e.g.*, Docket No. 30 at 36, 41, 57, 60. In these instances, documents related to the Walterses and to Petitioner were simultaneously discussed, but distinctively referred to, indicating that neither party was confused as to which IDR was issued to whom. *Id.*

Second, the parties discussed IDR 7 both prior to its issuance, on March 7, 2017, and again on May 1, 2017 (after Petitioner submitted a response), when they discussed the purported inadequacies of Petitioner's response to IDR 7. Docket No. 13-1 at 6-7. Petitioner never indicated that it believed IDR 7 was issued to the wrong taxpayer, until it filed the motion to quash.[3] *See*

_____

[3] The IRM does not mandate a deadline to respond to an IDR but, instead, requires the parties to agree on a "reasonable" date, and to cooperate and frequently communicate throughout the discovery process. IRM 4.46.4-1 (requires the IRS agent to "determine with the taxpayer a reasonable timeframe for a response to the IDR"), Exhibit 4.46.4-2(a) (requires the IRS agent to discuss with the taxpayer issues with a response to an IDR), 4.61.4.2 (requires the IRS agent to "[s]tress timely compliance with IDRs at the opening conference" and "work to maintain a spirit of cooperation with the taxpayer for the voluntary production of information"), 4.61.4.4-1(3) (requires the IRS agent to "[c]onsult [the taxpayer's] counsel when drafting the request"). Therefore, even with the flexibility offered in setting response deadlines, the Court finds that Petitioner forewent numerous opportunities to raise concerns regarding IDR 7. During discovery, a failure to timely assert an objection or raise concerns may constitute bad faith if objections or

*generally* Docket No. 13-1.  Most significantly, Petitioner responded to IDR 7 on April 18, 2017, without noting any objections.[4]  *Id.* at 7.

Lastly, Petitioner submits that "adverse consequences could arise with respect to one taxpayer when an IDR is addressed to someone else."  Docket No. 30 at 4.  Petitioner, however, fails to indicate any such adverse consequence in the instant case.  *See generally* Docket Nos. 1, 30.  Moreover, Ms. Kaplan was the point of contact for IDRs issued to Petitioner, as well as for the Walterses.  Docket Nos. 24-3 at 2, 24-4 at 2, 4; *see also* Docket No. 30 at 43-57, 61, 63.  The Court finds that a consistent point of contact further supports the fact that IDRs related to the Walterses and those related to Petitioner were not lost in translation.

The Court finds that IDR 7 was properly issued to Petitioner and, therefore, that the FDR should not be quashed on this basis.

B.      Request for Non-Documents

Petitioner submits that the FDR should be quashed because "an FDR is only permitted for the purpose of requesting documents," and "a substantial portion" of the underlying IDRs "were not document requests at all, but impermissible interrogatories that exceeded the permissible scope of [26 U.S.C. §] 982."  Docket No. 1 at 4-6.  In response, Respondent submits that, "[i]n accordance with [IRM 4.61.4], entire IDRs were attached to the FDR even though certain requests in an IDR may have called for testimony only or other information not covered under the FDR."  Docket No. 13 at 7.  Respondent further submits that, on January 25, 2018, it sent a letter to Petitioner "limiting

---

concerns are raised after a deadline.  *See cf. Wilson v. Greater Los Angeles Ass'n of Realtors*, 2016 U.S. Dist. LEXIS 58595, at *8 (D. Nev. May 2, 2016) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (internal citation omitted) (finding that failure to assert an objection to discovery requests constitutes a waiver of an objection)).

[4] Petitioner's response to IDR 7 does not raise the argument that IDR 7 was issued to the incorrect taxpayer.  Docket No. 22-4 at 3.  The Court finds that, by providing a response, especially without simultaneously objecting or raising any concerns, Petitioner waived the instant argument.  *See cf. Russell v. Daiichi-Sankyo, Inc.*, 2012 U.S. Dist. LEXIS 49161, at *10 (D. Mont. Apr. 6, 2012) (finding the "practice of objecting and then responding [to requests for production of documents] to be confusing and evasive" and, therefore, finding original and supplemental objections waived); *Anderson v. Hansen*, 2012 U.S. Dist. LEXIS 131010, at *18-19 (E.D. Cal. Sept. 13, 2012) (finding that a responding party that answers interrogatories in excess of the 25-interrogatory limit has waived subsequent objections based on excess interrogatories).

the effects of the FDR to certain documents requests within some of the attached IDRs."[5]  *Id.*; *see also* Docket No. 24-7.

In reply, Petitioner submits that IDRs are limited to requests for documents and that "[m]any of the original IDRs and certain of the IDRs for which the IRS continues to claim non-compliance … seek interrogatory responses rather than documents," in violation of 26 U.S.C. § 982.  Docket No. 30 at 4.  In reply, Respondent submits that, while FDRs are limited to documents, IDRs can be used to "obtain documents or pose questions."  Docket No. 33 at 3 (internal citation omitted).  Respondent reiterates its argument that it "clarified that the FDR only pertains to certain delineated document requests sought in the IDRs."  *Id.* at 4.

Petitioner asks the Court to accept its overarching argument that an IDR and an FDR are invalid if it requests non-document-based information and, therefore, that an allegedly invalid IDR or FDR cannot be subsequently modified.  *See e.g.*, Docket No. 30 at 5.  The Court disagrees.  As a preliminary matter, Petitioner incorrectly asserts that IDRs cannot request explanations or any non-document-based information.  *Id.*  Although FDRs are limited to documents, however, IDRs are not so limited and can be issued to obtain information generally.  *See supra* Section II; *see also* IRM 4.61.4.3; *Maddox*, 76 T.C.M. at *11 ("An IDR is an informal written request for information or documents from a taxpayer").

The issue then becomes how the IRS may obtain responses to IDRs, in whole or part, that request non-document-based information.  Petitioner submits that "[i]nterrogatory type requests are properly made through other means, primarily by testimony pursuant to a summons, which was never issued…."  Docket No. 30 at 5.  Additionally, during the parties' meeting on June 13, 2017, Ms. Kaplan stated that "an IDR cannot request an explanation," and that Respondent "should instead request an interview of Petitioner's staff."  Docket Nos. 13-1 at 8, 24-5 at 5.  Indeed, IDRs may be issued to request testimony of or an interview with the taxpayer or a witness.  IRM 4.46.4.2.1, 4.61.4.3; *see also* IRM 4.61.4.7(1).  Petitioner's argument, however, is disingenuous. Following Ms. Kaplan's statement requesting interviews, IRS agent Tim Neighbors stated he

---

[5] Respondent narrowed its requests in the FDR to IDRs 6(1) and (2), 7(1), 10(1)(d), 10(2)(d), 10(5)(b), and 11(1) - (5).  Docket No. 13 at 8.

would issue an IDR requesting an interview. Docket No. 24-5 at 5. Ms. Kaplan stated that "she [did not] think that an IDR would be necessary." *Id.* Shortly following that meeting, on July 11, 2017, Respondent issued interview requests for four individuals, including Mr. Walters. Docket Nos. 13-1 at 8, 24-5 at 3. Petitioner, however, declined to provide the interviews. Docket No. 13-1 at 8. Petitioner declined Respondent's request for an interview a second time on February 14, 2018. Docket No. 13-1 at 11. In essence, then Petitioner itself created the instant circumstance and, thus, cannot now argue that Respondent has improperly requested information through the FDR.

The Court finds that, even if an FDR is comprised of underlying IDRs which request non-document-based information, the FDR is not invalid and, moreover, can be subsequently modified. To invalidate an FDR on this basis goes against the intent and logic behind the applicable IRMs. First, IRM 4.61.4-1(4) requires that an FDR consist of a letter and the underlying IDRs. The IRM is silent on how the FDR should be composed if an underlying IDR requests non-document-based information, in addition to documents. IRM Exhibit 4.61.4-1, however, states that "[t]he FDR cannot request more information than was requested in the IDR. Advice of Counsel can be sought on a case-by-case basis as to the scope and wording of IDR's [*sic*]." In light of the IRS's silence, and IRM Exhibit 4.61.4-1's guidance, the Court finds that the IRS expected FDRs to consist of, although not actually request, non-document-based information but that, underlying IDRs may be modified so that an FDR properly requests only documents.

Second, IRM 4.46.4-1(d) permits subsequent IDRs to clarify issues with an initial IDR. Although this rule applies prior to the issuance of an FDR, taken in conjunction with the IRM's general mandate of cooperation and frequent communication between the parties, the Court finds that subsequent modifications of FDRs are permitted, if not encouraged, to facilitate the information gathering process. *See* 4.46.4-1(a) - (c); *see also* 4.61.4.2(g).

The Court therefore finds that Respondent appropriately modified the FDR by issuing the January 25, 2018, letter. Docket No. 24-7. Petitioner submits that "it is not for the taxpayer to discern what was intended by the IRS [in its request]." Docket No. 30 at 4. The letter clarifies that, "to the extent an IDR does not cover or pertain to 'foreign-based documents[,]' [Petitioner]

should not be impacted by the provisions of [26 U.S.C.] § 982(a)." Docket No. 30 at 4. The letter further clarifies that Respondent "will only seek to compel compliance with respect to certain items within the IDRs that were attached to the FDR," and assures Petitioner that it seeks only documents. *Id.* at 2-3.

Despite the letter narrowing the requests at issue and reiterating that Respondent seeks only documents, Petitioner argues that the following IDRs request "purely testimonial or interrogatory response[s]" that are not subject to enforcement under an FDR": IDRs 10(2)(d), 11(1), 11(3)(a) - (g), 11(3)(h), and 11(5).[6] Docket No. 30 at 13-21. The Court does not discuss each request but, instead, finds that, to the extent the requested information is available on any type of document, such a request is valid under 26 U.S.C. § 982 and the IRMs governing FDRs.

C.    Failure to Meet *Powell* Requirements

Petitioner submits that Respondent fails to satisfy the third and fourth *Powell* requirements and, therefore, the FDR should be quashed. Docket No. 1 at 7-10. The Court addresses each requirement in turn.[7]

i.    *Possession of Documents*

Petitioner submits that Respondent fails to show that it is not in possession of the requested documents and that, because Petitioner has substantially complied with the requests, Respondent cannot show it is not in possession of the requested documents. *Id.* In response, Respondent submits that it is not in possession of the "specific categories of documents sought by the FDR as limited [in the January 25, 2018 letter to Petitioner]." Docket No. 13 at 12; *see also* Docket No. 13-1 at 9. In reply, Petitioner submits that by limiting the requests, Respondent "essentially concedes that the vast majority of the requests on which the original FDR was based had been

---

[6] Petitioner responded to each of these IDRs without raising the objection that the IDRs requested non-document-based information. Docket Nos. 30 at 8-21, 22-4, 24-3, 24-4. It was not until after Petitioner responded that it indicated its belief that IDRs cannot request non-document-based information. Docket No. 24-5 at 5. Petitioner had multiple opportunities to raise these issues and objections but chose to forego them. *See supra* Section III(A) n. 3, 4.

[7] Respondent submits that it satisfied the first and second *Powell* requirements, despite the fact that Petitioner does not contend otherwise. *Compare* Docket No. 1 *with* Docket No. 13 at 11. The Court therefore does not discuss the legitimacy or relevancy of Respondent's requests.

complied with and are no longer being sought." Docket No. 30 at 7. Petitioner further submits that it "has delivered voluminous copies of documents" and, therefore, substantially complied with each request. *Id.* In reply, Respondent submits that, although Petitioner "did respond to some of the IDRs by producing documents, [the issue is whether Petitioner] has produced *all* the requested documents within its possession, custody, and control." Docket No. 33 at 8 (emphasis in original). Respondent further submits that Petitioner's compliance was called into question when a "delinquent unearthing of records" in response to certain requests for which Petitioner claimed had been destroyed was produced after Respondent issued the FDR. *Id.* at 9.

Respondent has a minimal burden to show that it has satisfied the *Powell* requirements. *See e.g.*, *Crystal*, 172 F.3d at 1144. This burden is generally satisfied by a declaration or an affidavit by the investigating IRS agent, indicating that the requirements have been met. *Id.* The burden then shifts to the taxpayer, who must establish that the information sought was already possessed by the IRS. *See Liberty*, 778 F.2d at 1393. This burden is heavy, as the taxpayer "must allege specific facts," or "offer some credible evidence supporting its charge." *Lee*, 2015 U.S. Dist. LEXIS 73399, at 24; *see also Liberty*, 778 F.2d at 1392 (internal citation omitted).

IRS agent Viviana Rodriguez's declaration establishes that the IRS is not already in possession of the requested documents. Docket No. 13-1 at 9. Respondent's response to Petitioner's motion to quash and counter motion to compel further asserts that it is not in possession of the requested documents. Docket Nos. 13 at 11-12, 26 at 11-12. The Court therefore finds that Respondent has met its burden in establishing the third *Powell* requirement.

Petitioner submits that it has produced "voluminous copies of documents" and is not in possession of certain documents and, therefore, has substantially complied with the underlying IDRs. Docket Nos. 1 at 7-10, 30 at 5-7; *see also U.S. v. Lui*, 2017 U.S. Dist. LEXIS 119953, at *7-8 (N.D. Cal. July 31, 2017) (noting that lack of custody or control is an affirmative defense in a motion to quash an FDR) (citing *U.S. v. Bright*, 596 F.3d 686, 695 (9th Cir. 2010)). An FRD can be issued only if a taxpayer has failed to produce the requested documents or to "substantially answer" an IDR. IRM Exhibit 4.61.4-1(1); *see also* 26 U.S.C. § 982(c)(1). To demonstrate a lack of possession, custody, or control of the requested documents … [a petitioner must] go further than

… a cursory search for records … or a conclusory, self-serving affidavit lacking detailed facts and any supporting evidence." *Larue*, 2015 U.S. Dist. LEXIS 171993, at *7 (citing *U.S. v. Seetapun*, 750 F.2d 601, 604 (7th Cir. 1984) and *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).  To determine whether Petitioner has met its burden, the Court looks to the facts and circumstances.  *See* IRM EXHIBIT 4.61.4-1(9)(a) ("Substantial compliance is a facts and circumstances test").

Petitioner makes the conclusory statement that it has produced "voluminous copies of documents," indicating the number of pages or general type of document, and, therefore, has substantially complied with the underlying IDRs.  Docket Nos. 1 at 7-10, 30 at 5-7.  Petitioner submits that "responsive documents are available for the Court's *in camera* review upon request, but have not been reproduced as exhibits since (1) they are currently in the possession of the IRS[;] (2) they are voluminous[;] and (3) they contain highly confidential information."  Docket No. 1 at 9.  The Court only considers well-developed arguments.  *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).  Additionally, Petitioner responded to various requests stating that it is not in possession of certain documents.  *Id.*; *see also* Docket No. 30 at 8-21.  These responses, however, fail to indicate what Petitioner did to search for responsive documents that went beyond a cursory search.  *Compare* Docket No. 30 at 8-12 *with Larue*, 2015 U.S. Dist. LEXIS 171993, at *7.

Petitioner further submits that, by closing IDRs 6 and 7, the IRS concedes that Petitioner substantially complied with these requests.  Docket No. 30 at 7.  Indeed, if the IRS considers a response to an IDR complete, it must notify the taxpayer and close the IDR.  IRM EXHIBIT 4.46.4-2.  Closing an IDR, however, is not a clear admission by the IRS that it is in possession of the requested documents.  *See cf. Solid Waste Servs., Inc. v. U.S.*, 2016 U.S. Dist. LEXIS 21493 (E.D. Pa. Jan. 13, 2016) (regarding a motion to quash a third party IRS summons, the Court found that, although the IRS closed an IDR after the petitioner provided documents exchanged with the third party at issue, it "does not demonstrate that the IRS was in possession of [the documents] maintained by [the third party] and, that any duplicative documents provided by the third party would "develop a complete picture of relevant transactions").

Importantly, several months after the FDR was issued, Petitioner produced a thumb drive containing responsive documents it insisted had been destroyed, on servers it further insisted had been discarded. *Compare* Docket Nos. 13-1 at 6, 13-1 at 11, 33 at 8-9 (Petitioner claims that it discarded gaming records when the business was terminated and discarded the servers "due to security concerns") *with* Docket Nos. 13 at 6-7, 30 at 63 (Petitioner notified Respondent that one of its managers found the thumb drive as he was cleaning his apartment in Panama). Additional circumstances surrounding the production of the thumb drive concern the Court as to Petitioner's overall diligence and candor in searching for responsive documents: (1) Respondent submits that Petitioner printed the documents from the thumb drive on September 20, 2017, but did not disclose them until December 2017; (2) Respondent submits that the documents are in a non-searchable format, and when it requested that Petitioner provide the documents in an appropriate format, Petitioner indicated that the necessary proprietary software had been destroyed along with the servers; (3) Petitioner later informed Respondent it would provide a duplicative software for the documents but, to date, has failed to provide it. Docket No. 13-1 at 10-12.

Petitioner produced the thumb drive seven to ten months after IDRs 6 and 7 were closed. *Compare* Docket No. 30 at 26, 57, 61 *with* Docket No. 30 at 63. Such a change in circumstances warrants opening IDRs previously deemed closed, and causes concern about whether Petitioner has produced all documents responsive to the underlying IDRs and whether it is in possession, custody, or control of further responsive documents. *See cf. Lui*, 2017 U.S. Dist. LEXIS 119953, at *11.

The Court finds that Petitioner has not met its burden to show that the IRS is not in possession of the requested documents and, therefore, that the FDR should not be quashed on this basis.

ii.    *Statement of Reason Documentation Previously Produced is Insufficient*

Petitioner submits that Respondent fails to provide an adequate statement of the reason the documentation previously produced was not sufficient, pursuant to 26 U.S.C. § 982(c)(1)(B). Docket No. 1 at 7-9. Petitioner further submits that, without an adequate statement, it is "left without explanation as to whether the documents which were provided were sufficient, or whether

the IRS has issue with the other improperly requested non-document information sought by the IRS through the FDR process." *Id.* at 9. In response, Respondent submits that its statement was sufficient and that its January 25, 2018, letter further clarified its requests.[8] Docket No. 13 at 12. In response, Petitioner reiterates its argument that Respondent's statement is inadequate. Docket No. 30 at 5. In reply, Respondent submits that it does not have to specify, beyond a statement describing the IDRs attached to the FDR, the reason the documentation previously produced was not sufficient. Docket No. 33 at 6-7. Respondent reiterates that it attached the underling IDRs pursuant to the IRM and, therefore, the FDR is not invalid because some of the underlying IDRs contain previous requests for non-document-based information. *Id.*

The IRS need only submit a declaration by the investigating agent that the *Powell* requirements have been met. *See supra* Sections II, III(C)(i). The Court finds that Respondent meets its burden. Docket No. 13-1 at 12 ("All administration requirements for issuance of the FDR have been satisfied"). Nonetheless, the Court examines the substance of Respondent's statement.

IRM Exhibit 4.61.4-1(10) provides an example of an FDR letter, including the statement required by 26 U.S.C. § 982(c)(1)(B): "**Why previously submitted documentation is not sufficient:** You did not provide the requested information described on Form 4564, Information Document Request, which was mailed to you at your above address on _____. _____. (State other reason if applicable)." (emphasis in original). The IRS need not explain in detail why documents previously produced were not sufficient, and may simply refer to previously issued IDRs. *See Eulich v. U.S.*, 2002 WL 3267388, at *4 (N.D. Tex. Sept. 17, 2002) (finding that requiring the IRS to provide a detailed explanation "would impose an impossible burden on the IRS to essentially determine tax deficiencies before even completing an examination of the tax returns at issue"); *see cf. Yujuico*, 818 F. Supp. at 288 (regarding 26 U.S.C. § 982(c)(1)(C), the Court found that the IRS need not provide an "item-by-item" description of the requested documents and that "a description

---

[8] Respondent submits that it satisfied the other administrative steps set forth in 26 U.S.C. § 982(c)(1), despite the fact that Petitioner does not contend otherwise. *Compare* Docket No. 1 *with* Docket No. 13 at 12. The Court therefore does not discuss these issues.

of the type of document sought" suffices); *but see Flying Tigers Oil Co. v. Commissioner*, 92 T.C. 1261, 1266 (1989) ("obviously when there is a total failure to produce any of the requested documents, no explanation is required to indicate why the nonproduction is insufficient"). Moreover, the IRS' issuance of IDRs and a petitioner's subsequent non-responsiveness, "demonstrates that the government exhausted the informal procedures for requesting documents prior to issuing the FDR and thus complied with the administrative procedures mandated by Section 982." *Yujuico*, 818 F. Supp. at 288.

Respondent's FDR states "You did not provide the requested information described on Form 4564, *Information Document Request*, which were submitted between November 9, 2016 and June 19, 2017." Docket No. 1 at 16. The Court therefore finds that Respondent's statement is adequate under the applicable standards.[9]

## IV. Conclusion

Accordingly, the Court **DENIES** Petitioner's motion to quash. Docket No. 1. The Court **GRANTS** Respondent's counter motion to compel compliance with the FDR. Docket No. 26. The Court **ORDERS** Petitioner to provide the requested documents, no later than August 31, 2018. To the extent Petitioner continues to insist it is not in possession, custody, or control of documents containing responsive information, it shall provide Respondent with a statement containing credible evidence and describing the search it conducted as to each request at issue and, from where or whom such information may be obtained.

IT IS SO ORDERED.

Dated: July 30, 2018

_____
NANCY J. KOPPE
United States Magistrate Judge

---

[9] In addition to the FDR, Respondent's January 25, 2018, letter provided further details regarding deficiencies, and the parties have held at least sixteen conference calls discussing the IDRs, deficiencies in responses, and other related issues. *See supra* Section III(A)(n.3), (B); *see also* Docket Nos. 13-1 at 4-11, 24-5.